322 So.2d 369 (1975)
LANE WILSON COMPANY, INC., Plaintiff-Appellee,
v.
R. W. GREGORY, Jr., Defendant-Appellant.
No. 12730.
Court of Appeal of Louisiana, Second Circuit.
November 6, 1975.
*371 James H. Trousdale, Jr., Monroe, for defendant-appellant.
Kostelka & Blackwell, by Marshall Blackwell, Monroe, for plaintiff-appellee.
Before HALL, MARVIN and BURGESS, JJ.
BURGESS, Judge.
Plaintiff, Lane Wilson Company, Inc., sued defendant, R. W. Gregory, Jr., to recover the balance of the contract price allegedly due under a building contract in which plaintiff agreed to construct a swimming pool for defendant. In answer to plaintiff's suit, defendant alleged that plaintiff had not constructed the pool according to the terms of the contract and reconvened for damages in an amount sufficient to correct the alleged defects in the pool. The trial court found that plaintiff had substantially performed under the contract. Therefore, the lower court held that plaintiff was entitled to recover the contract price subject to a credit of $300 to remedy a defect in plaintiff's performance. We amend the trial court's judgment and affirm the judgment as amended.
Defendant is the owner of a KOA Campground facility near Monroe, which provides trailer space and utility connections for overnight campers and mobile home travelers. To make his campground more attractive to the traveling public, defendant decided to have a large swimming pool built. Accordingly, defendant entered into a written contract with plaintiff by which plaintiff agreed to construct a 30-foot by 60-foot swimming pool with a depth varying from three feet to six feet for a price of $12,000. At a later date the parties orally modified their contract by agreeing that plaintiff would add a diving board and increase the depth of the pool to safely accommodate persons using the diving board. Other oral modifications included enlarging the walkway around the pool and erecting a longer fence.
The original contract was also allegedly amended to reduce the number of water inlets from twelve to six. The cost of these modifications raised the contract price to $13,643.36.
The contract was entered into on February 2, 1973. Construction began on May 29, 1973, and the pool was completed by the first part of July. Defendant has paid $8,400 on the contract but refuses to pay more because of the alleged failure of plaintiff to construct the pool according to the terms of the contract and because of alleged defects in the construction. Plaintiff brought this suit to recover the balance allegedly due it.
*372 Article 2769 of the Civil Code governs the disposition of this appeal. The article provides:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
In Florida Ice Machine Corp. v. Branton Insulation, Inc., 290 So.2d 415 (La.App. 4th Cir. 1974), the court in interpreting the code article stated:
"The jurisprudence interpreting this code article has made it clear that construction contracts are treated in a different manner than other commutative contracts. In the latter there can be no recovery in the absence of full performance. In the case of construction contracts, a substantial compliance with the contract is sufficient to justify recovery of the contract price by the contractor. The remedy against the contractor (or the subcontractor, as in this case) in the presence of substantial compliance or performance is to allege and prove the nature and extent of the unfinished or defective work in order to reduce the sum owed to the contractor by the amount of the cost involved in properly completing the contract work. Therefore, the person proceeding against the contractor who has substantially performed must prove both the existence of the defects or omissions on the part of the contractor and the cost of repairing or finishing the defective work."
As reflected by the jurisprudential interpretation of Article 2769, this appeal presents two issues. First, has plaintiff substantially performed the contract thereby enabling him to recover the balance due on the contract price? Second, if plaintiff has substantially performed, are there any defects in the construction which entitle defendant to damages in an amount sufficient to remedy the faulty performance?
In Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961), the supreme court considered Article 2769 and the meaning of "substantial performance." The court stated:
"Substantial performance of the contract is essential to warrant the application of this rule of law. For if the breached contract has not been substantially performed, the contractor may not recover on the contract, but is limited to recovery on quantum meruit.
"The principal question presented in this case is whether or not there has been substantial performance so as to permit recovery on the contract. This is a question of fact. Among the factors to be considered are the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the defendant of the work performed."
In light of the factors enumerated above, we cannot say the trial court was manifestly erroneous in finding that plaintiff substantially performed the contract. Defendant contracted for a 30 by 60 foot swimming pool deep enough to accommodate persons using a diving board. The defects alleged by defendant are not such that defeat the purpose of the contract or prevent defendant from using the pool. In addition, the defects for which plaintiff may be held accountable are easily remedied.
In reconvention, defendant has alleged numerous defects in performance which entitle him to damages.
(a) Rather than measuring 30 by 60 feet as called for by the contract, the pool's measurements fluctuate from 59 feet six inches to 59 feet three and one-half inches in length, and from 29 feet one-half inch *373 to 29 feet three and one-half inches in width.
(b) The walls of the pool are not vertical but slope severely to form a bowlshaped pool.
(c) Plaintiff installed only six water inlets as opposed to twelve water inlets called for by the contract; this deficiency coupled with the poor placement of the inlets results in insufficient water circulation in the pool.
(d) The pool is not ten feet deep as the parties allegedly agreed.
(e) Plaintiff improperly installed a "skimmer box" which cased an unsightly dangerous bump in the concrete.
(f) Plaintiff did not lay the amount of concrete walkway called for by the contract.
(g) Plaintiff installed the water pump on a piece of wood planking rather than on a concrete base.
(h) Plaintiff damaged defendant's sewer line while building the pool.
(i) Plaintiff installed incorrect depth markers.
(j) Defendant supplied 200 feet of pipe to plaintiff for which he was not compensated.
(k) Defendant performed some clean-up work which plaintiff was obligated to do but did not.
(l) Plaintiff only installed six water inlets but charged defendant for twelve water inlets.
This court will consider each of these alleged defects in order.
(a) Defendant alleges it will cost some $2,000 to remedy the defect in the length and breadth of the pool. In Blakesley v. Ransonet, 159 La. 310, 105 So. 354 (1925), an owner sought to avoid payment to a contractor who built a tomb, the measurements of which were not those called for by the contract. The court held the variance in the dimensions, which could not be determined except by actual measurement, was not a breach of the contract. The court also found that the slight difference in appearance between the left wall and the right wall of the tomb could not be avoided in constructing the tomb with the class of materials called for in the contract and was therefore not a defect in construction.
In the instant case we find the deviations in dimensions, which could be discovered only by measuring the pool, in no way defeat the purpose of the contract. Plaintiff also testified the method of constructing the pool made it impossible to achieve perfect compliance with the exact measurements called for by the contract. Therefore, under the authority of Blakesley, supra, we find the slight deviation in measurements did not constitute a breach of the contract.
(b) Defendant made no complaint about the shape of the pool walls until after suit was filed. The defect, if it be one at all, was apparent and defendant is held to have accepted same since he made no objection to the walls until suit was filed.
(c) The number of water inlets was changed at the suggestion of the supplier of the equipment because twelve water inlets would have lowered the water pressure and caused improper circulation in the pool. Defendant agreed to the change in plumbing and cannot now claim that change as a defect.
(d) Defendant failed to prove that the parties agreed to a ten-foot depth for the pool. We find the pool as constructed, is deep enough to accommodate a diving board and, therefore, there is no defect in regard to the depth of the pool.
(e) Assuming the raised "skimmer box" is a defect, defendant has not testified *374 what it would cost to remedy the alleged defect and, accordingly, defendant is not entitled to damages for this item.
(f) Plaintiff admits defendant is entitled to $38.52 because of a deficiency in the amount of concrete slab laid around the pool, and we, therefore, find defendant is entitled to this amount.
(g) Assuming that installing the pump on a wooden plank rather than on a concrete base is a defect, defendant, having offered no evidence concerning the cost to remedy this alleged defect, is not entitled to recover damages for this item.
(h) The damage to the sewer line was not discovered until Christmas of 1973, some six months after completion of the pool. Defendant failed to prove plaintiff was responsible for the harm; therefore, he is not entitled to damages.
(i) Defendant testified the cost of draining the pool, removing the incorrect depth markers, purchasing and installing new depth markers totaled $172.70. Plaintiff admitted he installed incorrect depth markers. The trial court did not allow defendant damages because it found defendant failed to prove the cost to remedy the defect. We find that, since plaintiff admitted the defect and did not object to the amount testified to by defendant, defendant has sufficiently proved the amount he actually expended to correct the defect and is entitled to $172.70 as damages.
(j) Plaintiff did not deny he was indebted to defendant in the amount of $84.50, the cost of 200 feet of defendant's pipe which plaintiff used in building the pool, and we find defendant is entitled to this amount as damages.
(k) Defendant sufficiently proved he removed waste cement and cement forms at a cost of $12.80, and he is entitled to this amount as damages.
(l) The contract as originally written called for twelve water inlets but only six water inlets were actually installed in accordance with the subsequent oral modification. Defendant is entitled to $22.50, which is the cost of six water inlets.
Totaling the amounts listed above, we find defendant is entitled to $331.02 as damages to correct defects in plaintiff's performance, in addition to the $300 allowed by the trial court for the cost of an additional chlorinator which plaintiff admitted the pool needed. Since plaintiff did not answer the appeal, the propriety of the trial court's award of $300 for the chlorinator is not before this court.
For the reasons assigned the judgment in favor of plaintiff is amended to reduce the award from $4,943.36 to the sum of $4,612.34, and as amended is affirmed at appellant's cost.